UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUZANNE SHERMAN<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | CASE NO. EDCV 06-1101 JTL<br><br>MEMORANDUM OPINION AND ORDER |

**PROCEEDINGS**

On October 5, 2006, Suzanne Sherman ("plaintiff") filed a Complaint seeking review of the Social Security Administration's denial of her application for Disability Insurance Benefits and Supplemental Security Income benefits. On October 25, 2006, plaintiff filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. On October 26, 2006, the Commissioner of Social Security, Michael J. Astrue ("defendant") filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on March 30, 2007, defendant filed an Answer to the Complaint. On July 3, 2007, the parties filed their Joint Stipulation. On July 19, 2007, the parties filed their first amended Joint Stipulation.

The matter is now ready for decision.

///

## BACKGROUND

On December 17, 2004, plaintiff filed applications for Disability Insurance Benefits and Supplemental Social Security Income benefits. (Administrative Record ["AR"] at 45-50). The Commissioner denied plaintiff's application for benefits both initially and upon reconsideration. (AR at 31, 37). Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 42).

On March 29, 2006, the ALJ conducted a hearing in West Los Angeles, California. (See AR at 220-32). Plaintiff appeared at the hearing with counsel and testified. (AR at 223-34). June Hagen, Ph.D., a vocational expert, also testified at the hearing. (AR at 232-34). On April 24, 2006, the ALJ issued her decision denying benefits to plaintiff. (AR at 15-19). Th Appeals Council denied plaintiff's timely request for review of the ALJ's decision. (AR at 5).

Thereafter, plaintiff appealed to the United States District Court.

## PLAINTIFF'S CONTENTIONS

Plaintiff makes the following claims:

1. The ALJ failed to properly consider the nurse practitioner's opinion of plaintiff's functional status.

2. The ALJ failed to properly consider the lay witness testimony of Michael P. Merrims, plaintiff's husband.

3. The ALJ erred in concluding that plaintiff's mental condition was not severe.

///
///
///
///
///
///
///

# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

# DISCUSSION

## A. The Sequential Evaluation

A claimant is disabled under Title II of the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2003).

The first step of the sequential evaluation is to determine whether the claimant is presently engaging in substantially gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantially gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 141 (1987). Second, the ALJ must determine whether the claimant has a severe impairment. Parra, 481 F.3d at 746. Third, the ALJ must determine whether the impairment is listed, or equivalent to an

1  impairment listed, in Appendix I of the regulations. Parra, 481 F.3d at 746. If the
2  impediment meets or equals one of the listed impairments, the claimant is presumptively
3  disabled. Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the
4  impairment prevents the claimant from doing his or her past relevant work. Parra, 481
5  F.3d at 746. If the claimant cannot perform his or her past relevant work, the ALJ
6  proceeds to the fifth step and must determine whether the impairment prevents the
7  claimant from performing any other substantially gainful activity. Parra, 481 F.3d at 746.
8   The claimant bears the burden of proving steps one through four, consistent with
9  the general rule that at all times, the burden is on the claimant to establish his or her
10 entitlement to supplemental security insurance benefits and disability insurance benefits.
11 Id. Once this prima facie case is established by the claimant, the burden shifts to the
12 Commissioner to show that the claimant may perform other gainful activity. Lounsburry
13 v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).

14 **B.      The ALJ's Consideration of the Nurse Practitioner's Opinion**

15       Plaintiff argues that the ALJ erred by failing to discuss the opinion of the nurse
16 practitioner in her decision. (Joint Stipulation at 3). Plaintiff argues that the nurse
17 practitioner's opinion qualified as an opinion from an "other source" or, possibly from a
18 "treating source," and that the ALJ failed to meet her duty to develop the record to
19 facilitate proper consideration of the nurse practitioner's opinion. (Joint Stipulation at 3-
20 5).

21       Evidence from an acceptable medical source is necessary for a social security
22 claimant to establish a medically determinable impairment. 20 C.F.R. § 404.1513(a)
23 (2007). Acceptable medical sources include licensed physicians and licensed or certified
24 psychologists. Id. A social security claimant may provide evidence from other sources
25 to show the severity of his or her impairment and how the impairment affects his or her
26 ability to work. 20 CFR § 404.1513(d) (2007). Other sources include, but are not limited
27 to, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and
28 therapists. 20 C.F.R. § 404.1513(d)(1) (2007). An ALJ may reject the testimony of an

"other source" by providing reasons germane to that witness. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

Here, plaintiff received treatment from High Desert Primary Care from September 2004 through June 2005. (AR at 158-77). The treatment notes, including those completed by Ann Scheer, a nurse practioner, indicate that plaintiff received routine medical care for minor ailments from High Desert Primary Care. (See AR at 158-77). Treatment notes from September 8, 2004 indicate that plaintiff complained of "feeling anxiety along with sometimes the sensation of her heart beating in her chest" and a possible urinary tract infection. (AR at 175). Ms. Scheer's assessment of plaintiff during that visit indicates that plaintiff suffered from an urinary tract infection, gastroespohageal reflux, and palpitations/anxiety. (AR at 175).

Treatment notes from October 22, 2004 indicate that plaintiff was seen for a possible urinary tract infection and a wart that had reoccurred on her left knee. (AR at 169). The treatment notes indicate that plaintiff stated that her gastroesophageal reflux was well controlled with medication and that the occasional use of Xanax was helping her sleep. (AR at 169). On December 15, 2006, plaintiff went in for treatment of a urinary tract infection, for refills of her medications for gastroesophageal reflux, complained of pain in her left leg, and requested a prescription for Wellbutrin for smoking cessation. (AR at 166, 168).

Treatment notes from May 4, 2005 indicate that plaintiff was seen by Ms. Scheer and treated for anxiety, insomnia, and gastroesophageal reflux. (AR at 162). Plaintiff went in for a follow-up visit on May 18, 2005 and Ms. Scheer noted that plaintiff "is feeling less anxious and that her moods are settling," that although plaintiff "has a sensation that she is not able to take a deep breath . . . [s]he does not really feel short of breath and she is able to maintain her present activities," and that plaintiff is an "[a]lert and orientated female in no acute distress." (AR at 160).

In response to a questionnaire sent to High Desert Primary Care by the Department of Social Services on June 2, 2005, Ms. Scheer indicated that plaintiff was alert and

1 appropriate during office visits, got along with others, and appeared to be capable of
2 caring for her personal grooming and hygiene.  (AR at 159, 164).  While Ms. Scheer
3 indicated that plaintiff was forgetful and easily distracted, Ms. Scheer also indicated that
4 plaintiff was able to follow simple instructions, that she cooperated with instructions
5 regarding treatment, and could come to the office alone without any assistance.  (AR at
6 159).  Ms. Scheer also indicated that she had considered referring plaintiff to a mental
7 health professional because plaintiff was having difficulty with focus and recall.  (AR at
8 164).

9       The treatment notes completed by Ms. Scheer, a nurse practioner, cannot properly
10 be categorized as an opinion from a treating medical source, even if Ms. Scheer was
11 working as part of an interdisciplinary medical team.  20 CFR § 404.1513(a); cf. Gomez
12 v. Chater, 74 F.3d 967, 971 (9th Cir. 1997) (relying on former 20 C.F.R. § 416.913(a)(6),
13 which has since been revoked, to find the opinion of a nurse practioner working as part
14 of an interdisciplinary medical team to be part of the treating doctor's opinion).  Instead,
15 Ms. Scheer is properly characterized as an "other source" that the ALJ may consider
16 pursuant to 20 C.F.R. § 404.1513(d).

17       In her decision, the ALJ considered plaintiff's treatment records from High Desert
18 Primary Care from September 2004 to June 2005, including those completed by Ms.
19 Scheer.  (AR at 17).  In particular, the ALJ cited the treatment plaintiff received from High
20 Desert Primary Care in support of her finding that "[t]he medical evidence shows that the
21 claimant has basically received routine medical care on an occasional basis for minor
22 ailments such as back pain, joint pain, urinary tract infections and gastroesophageal reflux,
23 and for general health maintenance."  (AR at 17).

24       The ALJ's decision was consistent with the treatment notes from High Desert
25 Primary Care that Ms. Scheer completed.  (See AR at 17).  Ms. Scheer's notes indicate
26 plaintiff received routine treatment for minor impairments and that her anxiety and
27 gastroesophageal reflux were successfully managed by medication and, accordingly,
28 support the ALJ's finding.  See Parra, 481 F.3d at 746.  Ms. Scheer never rendered an

opinion regarding plaintiff's functional limitations that supports plaintiff's claim of disability. See 20 C.F.R. § 404.1527(a)(2) (2006). Thus, the ALJ did not err in her consideration of Ms. Scheer's opinion.

With regard to plaintiff's claim that the ALJ failed to properly develop the record, plaintiff is correct in stating that an ALJ has an independent duty to fully and fairly develop the record and assure that the plaintiff's interests are considered. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 1991). However, it is only when the evidence is ambiguous, or where the ALJ finds that the record is inadequate to allow for proper evaluation of disability, that the ALJ's duty to develop the record is triggered. Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). Here, the requisite ambiguity or inadequacy of the record was not present to trigger the ALJ's duty to develop the record. Ms. Scheer was clearly identified as a nurse practitioner. Her treatment notes were clear and unambiguous, and the ALJ accorded them the proper significance. The ALJ's duty to develop the record was not triggered and the ALJ committed no error by not making further inquiries.

**C.      The ALJ's Consideration of the Lay Witness Testimony of Plaintiff's Husband**

Plaintiff alleges that the ALJ erred in failing to discuss in her decision the third-party questionnaire that Michael P. Merrims, plaintiff's husband, completed. (Joint Stipulation at 10). Plaintiff argues that the ALJ erred by disregarding Mr. Merrims's lay witness testimony, and by failing to indicate in her decision which portions of the questionnaire she accepted or rejected. (Id.).

A person who is in a position to observe a claimant regularly and testifies regarding his or her symptoms and ability to work is a competent lay witness and an ALJ must consider his or her testimony. Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). However, an ALJ need not meet the impossible burden of mentioning every piece of evidence presented in his or her decision. Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003); Orcutt v. Barnhart, 2005 U.S. Dist. LEXIS 39731, *25 (Sept. 27, 2005). Silent disregard of competent lay witness testimony is harmless if the Court can confidently

7

conclude that no reasonable ALJ, when fully crediting the testimony at issue, could reach a different disability determination. Stout v. Comm'r, 454 F. 3d 1050, 1056 (9th Cir. 2006).

On June 15, 2005, plaintiff's husband, Michael P. Merrims, completed a third-party questionnaire that contained a series of questions regarding plaintiff's daily activities and functional abilities. (AR at 84-91). When asked, "[h]ow much time do you spend with the disabled person and what do you do together," Mr. Merrims responded "24 hrs a day." (AR at 84). Mr. Merrims indicated that plaintiff is unable to sleep well, has a hard time with her personal care routine, including her ability to dress, bathe, care for her hair, feed herself, and use the toilet. (AR at 85). He indicated that he has to remind plaintiff to take care of her personal needs and grooming and that plaintiff writes reminders to herself to take her medications. (AR at 86). Mr. Merrims's responses indicate plaintiff does not prepare her own meals, do any house work other than garden, or pay any bills. (AR at 86). Mr. Merrims indicated that plaintiff is able to drive a car and goes out one to two times a day, and that she is able to go shopping. (AR at 86-87). Mr. Merrims also indicated that plaintiff did not handle stress or changes in routine well, and that she worries about money. (AR at 90).

Most of the information provided by Mr. Merrims in the third-party questionnaire was vague and not particularly detailed. In response to the question "[w]hat was the disabled person able to do before his/her illnesses, injuries, or conditions that he/she can't do now[,]" Mr. Merrims responded, "[e]verything within reason." (AR at 85). Although Mr. Merrims lived with plaintiff and stated that he saw plaintiff "24 hours a day," it is not clear whether Mr. Merrims was in a position to fully observe plaintiff's functional limitations and provide credible testimony regarding plaintiff's symptoms and ability to work. See Dodrill, 12 F.3d at 919.

For example, Mr. Merrims was not able to provide a detailed description of plaintiff's activities and functional abilities. In response to the request to "[d]escribe what the disabled person does from the time he/she wakes up until going to bed," Mr.

8

1 Merrims's only response was, "[w]atches a lot of TV." (AR at 84). While Mr. Merrims
2 indicated that plaintiff's illness, injuries or condition affected her memory and
3 concentration and her ability to do the following: lifting, squatting, bending, standing,
4 reaching, sitting, kneeling, stair climbing, completing tasks, understanding, following
5 instructions, and getting along with others, when asked to explain how plaintiff's illness,
6 injuries or conditions affected each of the above-listed activities, Mr. Merrims replied, "I
7 don't know." (AR at 89). Mr. Merrims responded "unknown" to questions regarding how
8 often plaintiff talks on the phone and how often she goes to the doctor. (AR at 88). He
9 also indicated that he did not know how long plaintiff has to rest before she can resume
10 walking. (AR at 89).

11 Substantial evidence supports the ALJ's disability determination. (See AR at 17-19,
12 114-19, 120-48, 215-19). Even if the ALJ fully credited Mr. Merrims's testimony, the
13 Court finds that no reasonable ALJ would have reached a different disability
14 determination. See Stout, 454 F.3d at 1056. Thus, the Court finds that any error the ALJ
15 committed by silently disregarding Mr. Merrims's testimony is harmless and cannot serve
16 as the basis for remand. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (a
17 decision of the ALJ will not be reversed for errors that are harmless).

18 **D.     The ALJ's Consideration of the Severity of Plaintiff's Mental Impairments**

19 Plaintiff alleges that by failing to properly consider the statements of Ms. Scheer
20 and Mr. Merrims, the ALJ was unable to properly evaluate the severity of plaintiff's
21 mental impairments. (Joint Stipulation at 15). Defendant argues that the alleged mental
22 difficulties indicated by Mr. Merrims and the indication that plaintiff suffered from
23 anxiety and depression by Ms. Scheer are not sufficient to show that plaintiff suffers from
24 a severe mental impairment. (Joint Stipulation at 15).

25 Objective medical evidence of an underlying impairment is necessary to establish
26 disability. 20 C.F.R. §§ 404.1528, 404.1529 (2006). However, mere diagnosis of an
27 impairment is not sufficient to show severity. At step two of the sequential analysis, the
28 ALJ must assess whether claimant has a medically severe impairment or combination of

impairments that significantly limits his ability to do basic work activities. <u>Webb v. Barnhart</u>, 433 F.3d 683, 686 (9th Cir. 2005); 20 C.F.R. § 404.1520(a)(4)(ii) (2003). Basic work activities include the "abilities and aptitudes necessary to do most jobs," such as "understanding, carrying out, and remembering simple instructions" and "responding appropriately to supervision, co-workers and usual work conditions." 20 C.F.R. § 404.1521(b) (1985). An impairment is not severe if it is merely a slight abnormality, or combination of slight abnormalities, that has a minimal effect on the claimant's ability to do basic work activities. S.S.R. No. 96-3(p).[1] The burden is on the claimant to establish that his or her impairment is severe. <u>Parra</u>, 481 F.3d at 746. If the ALJ finds that the claimant lacks a medically severe impairment, the ALJ cannot find the claimant to be disabled. <u>Webb</u>, 433 F.3d at 686.

Here, the ALJ determined that plaintiff failed to establish a mental condition that would cause the symptoms and limitations that she alleges. (AR at 17). In her decision, the ALJ notes that the records and progress reports from plaintiff's treating sources indicate that plaintiff has intermittently reported symptoms of anxiety and depression. (AR at 18). However, the ALJ concluded that plaintiff's complaints have generally been "related to various normal life problems, without any actual evidence of chronic clinical depression or debilitating anxiety."(AR at 18). In making this decision, the ALJ relied on treatment notes that described plaintiff's emotional condition as "stable" or "improved" on various occasions, and cited to the treatment notes of Alicia Benjamin, M.D., an internal medicine physician who treated plaintiff from February 2000 through September 2001 (AR at 118-19) and John A. Berger, M.D., who treated plaintiff from June 2002 through January 2004 (AR at 125). (AR at 18).

---

[1] Social Security Rulings are issued by the Commissioner to clarify the Commissioner's regulations and policies. <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 346 n.3 (9th Cir. 1991) (en banc). Although they do not have the force of law, they are, nevertheless given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." <u>Han v. Bowen</u>, 882 F.2d 1453, 1457 (9th Cir. 1989).

The ALJ also cited the fact that plaintiff had never received treatment by a psychiatrist or psychologist in support of her determination that plaintiff had not established a mental impairment that would cause the symptoms she alleged. See Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (an ALJ may rely on a claimant's conservative treatment regimen to reject a plaintiff's testimony of disabling limitations or disabling pain). The ALJ noted that all of plaintiff's "mild and intermittent emotional symptoms have been treated by either a family doctor or nurse practioner." (AR at 18). Notably, Donald Williams, M.D., a psychiatrist who completed a Psychiatric Review Technique Form assessing plaintiffs mental condition from December 1, 2002 to April 20, 2005, found that plaintiff's mental impairments were not severe. (AR at 193).

Plaintiff also failed to meet her burden of showing how a mental impairment significantly limited her ability to do basic work activities. See Webb, 433 F.3d at 686; Parra, 481 F.3d at 746. As discussed above, the treatment notes completed by Ms. Scheer, at best, establish that plaintiff suffered from anxiety and depression. While Ms. Scheer's response to the social service questionnaire indicated that she had considered referral of plaintiff to a mental health professional, there is no indication of whether she did refer plaintiff to a mental health professional, nor any explanation of why she may not have done so. (AR at 164). While Ms. Scheer indicated that plaintiff had problems with focus and recall, she never indicated that plaintiff suffered from a mental impairment that significantly limited her ability to do any basic work activities.   (See AR at 158-77). Accordingly, the treatment notes completed by Ms. Scheer do not support a finding of a severe mental impairment and the ALJ did not err in her consideration of Ms. Scheer's opinion in support of her conclusion that plaintiff does not suffer from a severe mental impairment.

Similarly, the third-party questionnaire completed by Mr. Merrims does not support a disability determination or a finding that plaintiff suffered from a severe mental impairment. As discussed above, Mr. Merrims indicated that plaintiff is unable to sleep well, needs a reminder to take care of her personal needs and grooming and to take her

11

1 medications, but he does not indicate that plaintiff is unable to perform any basic work
2 activities. (<u>See</u> AR at 85-86). Mr. Merrims also indicated that plaintiff's memory,
3 concentration, ability to complete tasks, understand, follow instructions, and get along
4 with others, are affected by her illness, injuries or conditions, but he was unable to explain
5 how plaintiff's illness, injuries or conditions affected the listed abilities. (AR at 89).

6 As discussed above, no reasonable ALJ could reach a different disability
7 determination based on Mr. Merrims's testimony. His testimony was vague and does not
8 support a finding that plaintiff suffered from any impairment that significantly limited her
9 ability to do basic work activity. Thus, the ALJ did not commit reversible error in the
10 treatment of Mr. Merrims's testimony with regard to the severity of plaintiff's mental
11 impairment.

**ORDER**

After careful consideration of all documents filed in this matter, this Court finds that the decision of the Commissioner is supported by substantial evidence and that the Commissioner applied the proper legal standards. The Court, therefore, **AFFIRMS** the decision of the Commissioner of Social Security Administration.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: September 28, 2007

/s/
JENNIFER LUM
UNITED STATES MAGISTRATE JUDGE